In the Matter of Toula FREEMAN, aka Toula Freeman Raasch, Toula Wig & Toula Enterprises, Bankrupt.

Alfred FREEMAN, Petitioner-Appellee,

v.

George RITNER, Respondent-Appellant.

No. 71–3028.

United States Court of Appeals, Ninth Circuit.

Dec. 11, 1973.

Murry Luftig (argued), San Diego, Cal., for respondent-appellant.

A. Lee Estep, Richard A. Peterson (argued), San Diego, Cal., for petitioner-appellee.

## OPINION

Before MERRILL and HUFSTEDLER, Circuit Judges, and KELLEHER,* District Judge.

MERRILL, Circuit Judge.

In April, 1966, the bankrupt and her husband agreed that the latter should have, as a part of his share of their property in a divorce settlement, all of any federal income tax refund due to the couple as husband and wife or to either of them. Three-and-one-half years later, in August, 1969, a refund check in the sum of $10,301.47 was issued by the Government. By that time proceedings involving bankruptcy of the wife were pending and the check was taken over by the trustee. The referee ruled that the trustee had a one-half interest in the refund. The husband sought review of that holding and the District Court reversed. This appeal was then taken by the trustee. We affirm.

It is conceded that the assignment by the bankrupt to her husband in 1966 was not in accordance with the Assignment of Claims Act, 31 U.S.C. § 203. Failure to comply with the Assignment

---

* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

of Claims Act renders the assignment null and void so far as the United States is concerned. However, it does not render the assignment void as between the parties. In Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937), it was held that even though an assignment was void so far as the United States was concerned, once the assigned claim had been paid by the United States the assignment was effective against a subsequent assignee with notice. The Court stated:

"The provisions of the statute making void an assignment or power of attorney by a Government contractor are for the protection of the Government. [Citations omitted.] In the absence of such a rule, the Government would be in danger of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability. [Citation omitted.] But as applied to the fund in controversy, that peril is now past. The fund is in court to be distributed to rival claimants, with the Government discharged irrespective of the outcome. * * * [T]he Government is not concerned to regulate the equities of claimants growing out of irregular assignments when collection is complete and liability is ended. The purpose of the statute 'was not to dictate to the contractor what he should do with the money received on his contract after the contract had been performed.' [Citation.] * * * A transfer of the fund after payment is perfected is of no concern to any one except the parties to the transaction, and this quite irrespective of the time of the assignment or the manner of its making.

* * * * * *

[T]he statute must be interpreted in the light of its purpose to give protection to the Government. After payments have been collected and are in the hands of the contractor or subsequent payees with notice, assignments may be heeded, at all events in equity, if they will not frustrate the ends to which the prohibition was directed. * * * An assignment ineffective at law may none the less amount to the creation of an equitable lien when the subject matter of the assignment has been reduced to possession and is in the hands of the assignor or of persons claiming under him with notice." 300 U.S. at 594–595, 596–597, 57 S.Ct. at 534.

In Danning v. Mintz, 367 F.2d 304 (9th Cir. 1966), this court recognized that failure to comply with the Assignment of Claims Act did not render the assignment invalid as between the parties.

▆ At the time of assignment, then, while the assignor had a present existing claim against the United States, she could not effectively transfer to another the right as she enjoyed it, since she could not transfer to another the power to press the claim against the United States. One effect of the assignment, then, was to convert the right assigned into a future right—a right to the proceeds of payment once the claim was paid by the United States.

▆ The assignability of such a right depends on local law. Danning v. Mintz, *supra*, 367 F.2d at 308. Under California law (the law here applicable), a future right can be assigned. It becomes operative at the time the right assigned comes into existence or becomes recoverable, without any further act on the part of the transferor, and relates back to the date of the assignment. Prudential Insurance Co. v. Broadhurst, 157 Cal.App.2d 375, 388, 321 P.2d 75, 77 (1958).

▆ Here, then as in *Martin* and in Danning v. Mintz, the assignment would be valid as against a subsequent assignee.[1]

I. It is not claimed that the transaction was such that the filing requirements of Division 9 of the California Uniform Commercial Code are applicable. It appears that the transaction is governed by California Civil Code § 955.1, in that it involved "a transfer

The trustee contends, however, that since the assignment was not enforceable between the parties until paid by the United States, it was not "perfected" until then within the meaning of 11 U.S.C. § 96(a)(2),[2] and thus must be deemed to have been made immediately before the filing of the petition in bankruptcy and to constitute a voidable preference. The question was reserved by this court in Danning v. Mintz, *supra*, 367 F.2d at 308. Matter of Ideal Mercantile Corporation, 244 F.2d 828 (2d Cir. 1957), supports the trustee's position. We must respectfully disagree.

The "perfection" of transfer under § 96(a)(2) must be such that no subsequent lien acquired by a simple contract creditor of the assignor upon the transferred property could become superior to the rights of the transferee. If the Assignment of Claims Act did adversely affect the transfer (and if that were the only disability) it would, to the same extent and for the same reason, do so as to any subsequent transferee or lienor. The existence of an identical disability would preclude the gaining of superiority.

But in truth the Assignment of Claims Act does not adversely affect the transfer in the sense of § 96(a)(2) "perfection." It is not the right against the United States that must be "so far perfected" but the right as against the assignor (or others who may claim under her) to have the claim once it becomes recoverable. The question is whether the assignor has so completely and irrevocably parted with her interest in the transferred property that there is nothing left that could be passed on by her or reached through her by others. Since local law gives recognition to the validity of the assignment as against the assignor or any subsequent assignee, and gives such recognition as of the date of the assignment, and since the Assignment of Claims Act under Martin v. National Surety Co., *supra*, does nothing to disturb this result, this question must be answered in the affirmative.

We conclude that the transfer was, as of its date, perfected to the extent required by § 96(a)(2).

Judgment affirmed.

---

other than one intended to create a security interest * * * of [a] general intangible * * * consisting of any right to payment * * *." Under this statute no filing is required to perfect the transfer against third persons; perfection is accomplished by a writing between the parties to the assignment. In this case it appears that a sufficient writing existed.

2. "For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. * * * If any transfer of * * * property * * * is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of the petition."